UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WAYNE B. HOLLINGSWORTH, and<br>JUNE L. HOLLINGSWORTH,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV-05-80-B-W |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

The Hollingsworths have invited the Internal Revenue Service ("IRS") to court to recover income taxes allegedly incorrectly collected from their bankrupt estate. This Order arises as a result of the IRS' attempt to decline that invitation by filing a Rule 12(b)(1) motion to dismiss on jurisdictional grounds. The IRS asserts that Plaintiffs have failed to allege that they were the ones who paid their taxes and therefore, it has not waived sovereign immunity. This Court concludes the motion to dismiss must be denied. The Plaintiffs provided enough information in their Complaint and supplemental materials to survive Defendant's two-pronged 12(b)(1) challenge.

**I.    Factual Background and Procedural History**[1]

    **A. The 1993 Personal Income Tax Return**

Plaintiffs, Wayne and June Hollingsworth, reside in Mount Vernon, Maine. *Compl.* at ¶ 2 (Docket # 1). During 1993, Wayne Hollingsworth was a limited partner in the

---

[1] As noted in the "Standard of Review" section of this Order, there are two ways to challenge a complaint on Rule 12(b)(1) grounds. For purposes of the first, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor. For purposes of the second, the Court may inquire into the facts and is not restricted to the face of the complaint. *See infra* sec. II. Mindful of these two possibilities, this section sets forth the facts as alleged not only in the Complaint but in the parties' accompanying exhibits.

Ocean Edge Inn Limited Partnership ("Partnership"). However, on or about June 1, 1993, the General Partners elected to take over the Partnership property and forgive any debt owed by the Limited Partners. *Compl.* at ¶¶ 7-8. The Hollingsworths reported a gain of $237,013 from this transaction on their joint individual tax return and a tax liability of $40,107. *Compl.* at ¶ 6, 9; Form 1040 for 1993 (Docket # 6 – Ex. 1). At that point, they had made no payments towards their 1993 income tax liability. Form 1040 for 1993.

### B. Wayne Hollingsworth's Bankruptcy and the Cayman Property on Gin Lane

In 1994, Wayne Hollingsworth filed a Chapter 7 bankruptcy in the Middle District of Florida. *Bankr. Am. Compl.* (Docket # 9 - Ex. 2). In 1995, the trustee of the bankruptcy estate ("Trustee") alleged that Cayman U.S.A. Ltd. a/k/a Cayman U.S. Developments, Ltd. a/k/a Cayman U.S. Development Co. ("Cayman") was an alter ego of Mr. Hollingsworth and its assets were under his direct management, ownership, and control. *Id.*; *Mot. to Compromise* (Docket # 9 – Ex. 3). In an amended complaint filed that year against Cayman and other defendants, the Trustee initiated an adversary action against Mr. Hollingsworth and Cayman to pierce Cayman's corporate veil and consolidate its assets, including property located on Gin Lane, in Naples, Florida, with the debtor's bankruptcy estate. *Bankr. Am. Compl.* at 3-4, 10.

### C. The $350,000 Payment to the Bankrupt Estate

On November 8, 1996, an Escrow Agreement was reached, by which the Trustee dissolved a previously-filed *lis pendens* on the Gin Lane property in exchange for $350,000 placed in escrow from any sale proceeds. In March 1997, the Bankruptcy

2

Court entered a final order of default against Cayman in the earlier adversary action, and ultimately the bankrupt estate of Wayne Hollingsworth received the $350,000 pursuant to the terms of the Escrow Agreement. *Mot. to Compromise*. In her December 28, 1999 Motion to Compromise, the Trustee apparently took the position that the escrowed funds represented a compromise of Mr. Hollingsworth's interest in the Cayman property. However, on March 9, 2000, the Bankruptcy Court granted the Trustee's Motion to Compromise *nunc pro tunc*, without determining the exact nature of these monies. *Order Granting Trustee's Mot. to Compromise* (Docket # 9 – Ex. 4). In 1996, Mr. Hollingsworth swore by affidavit that the Cayman principals had promised him a percentage of any net profits from the sale of the property to compensate him for acquiring, financing, improving, and maintaining that property, but that he had never owned a stock interest in the company. *Aff. of Wayne Hollingsworth* at ¶ 9 (Docket # 9 – Ex. 5).

### D. The Bankruptcy Trustee Pays the IRS

The gain of $237,013 the Hollingsworths reported in 1993 from the Partnership was from the discharge of indebtedness by the General Partners. Under Internal Revenue Code § 108(a)(1)(B), such a gain is excludable from taxable income if Plaintiffs were insolvent at the time. *Compl.* at ¶ 10. Consequently, on April 10, 1997, Plaintiffs timely filed an amended 1993 tax return, decreasing the amount of their taxable income by the same amount, claiming abatement or refund. *Id*. at 10, 12. On or about June, 2000, using proceeds from the Escrow Agreement, the Bankruptcy Trustee paid the IRS the income

tax based upon the alleged taxable income generated by the forgiveness of debt in 1993.[2] *Compl.* at ¶ 11; *Notice of Filing Interim Report* at Form 2, pgs. 1, 3 (Docket # 9 – Ex. 7).

### E.  The Hollingsworth Claim and the IRS Denial

At the request of the IRS, the Hollingsworths re-filed an amended 1993 tax return on January 24, 2001.  *Compl.* at ¶ 10.  The IRS denied the refund claim on May 13, 2002. *Letter dated May 13, 2002 from IRS* (Docket # 6 – Ex. 4).  Mr. Hollingsworth protested on June 18, 2002.  *Letter dated June 18, 2002 from Wayne Hollingsworth* (Docket # 6 – Ex. 5).  During the ongoing investigation of the refund claim, Mr. Hollingsworth repeatedly asserted that the $350,000 he received from the Cayman default was not his, but belonged to "a client".  *Id.; Letter dated Sept. 17, 2004 from Wayne Hollingsworth* (Docket # 6 – Ex. 6); *Letter dated Jan. 2, 2002 from W.B. Hollingsworth* (Docket # 6 – Ex. 3).  However, Plaintiffs have claimed damages as a direct and proximate result of the erroneous assessment and collection of federal income taxes for 1993.  *Compl.* at ¶ 13.

On April 20, 2005, Vivian C. Watson, Appeals Officer, IRS – Appeals Office, Jacksonville, Florida, denied Plaintiffs' claim of abatement and/or refunded taxes. *Compl.* at ¶ 12.  The letter informed the Hollingsworths that they could pursue this matter either in the United States District Court or in the United States Court of Federal Claims by May 31, 2005.  *Id.*  This suit was filed on May 23, 2005 (Docket # 1).  Plaintiffs assert jurisdiction based on 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1).  *Compl.* at ¶ 4.  They request that this Court overturn the IRS's failure to allow Plaintiffs' claim of refund, order the payment of such tax relief in the minimum amount of $39,837 plus interest, and

---

[2] On July 5, 2000, the Bankruptcy Trustee filed an Interim Report, which showed that the estimated net value of the debtor's assets totaled $370,265.09 of which $362,565.09 was denominated "escrow money" presumably with some increase for interest.  *Notice of Filing Interim Report* at Form 1, pg. 1 (Docket # 9 – Ex. 7).  The only other significant asset was a lake seaplane, which was valued at $7,700.00.  *Id.*  This Report lists payments to the IRS on June 5, 2000 of $48,184.61 and $4,652.34.  *Id.* at Form 2, pgs. 1, 3.

order the judgment of attorney's fees and costs as well as other relief deemed appropriate.³ *Compl.* On August 8, 2005, the Government filed a motion to dismiss, arguing that Plaintiffs failed to allege that their assets were used to pay their tax liability, and hence, under existing law, the Government had not waived its right of sovereign immunity (Docket # 6). The Plaintiffs responded on November 15, 2005 (Docket # 9), and the Government replied on November 25, 2005 (Docket # 10).

## II.   Standard of Review

Rule 12(b)(1) provides in part:

Every defense, in law or fact, to a claim for relief in any pleading…shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter….” Fed. R. Civ. P. 12(b)(1).

"A motion to dismiss an action under Rule 12(b)(1)…raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it". *United States v. Lahey Clinic Hosp., Inc.,* 399 F.3d 1, 8 n.6 (1st Cir. 2005)(citation omitted). The party invoking the jurisdiction of a federal court carries the burden of proving its existence. *See Thomson v. Gaskill,* 315 U.S. 442, 446 (1942)("if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof"); *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995)(quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir. 1993)). Establishing jurisdiction in an action against the United States

---

³ The Plaintiffs' prayer for relief actually requests that this Court "overturn the failure of the Internal Revenue Service, United States of America to <u>disallow</u> Plaintiffs' claim for a tax refund for the year 1993." *Compl.* (emphasis supplied).

5

includes establishing that there has been a waiver of sovereign immunity.[4] *See United States v. Dalm,* 494 U.S. 596, 608 (1990); *Hanley v. United States,* No. 94-1315, 1994 U.S. App. LEXIS 30760, *5-*6 (1st Cir. Oct. 5, 1994)(unpublished)("plaintiff has the burden of showing a waiver of sovereign immunity"); *Wood v. United States,* 148 F. Supp. 2d 68, 70-71 (D. Me. 2001), *aff'd by* 290 F.3d 29 (1st Cir. 2002). To meet his burden the proponent must clearly indicate the grounds upon which the court may properly exercise jurisdiction. "It is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading". *PCS 2000 LP v. Romulus Telecomms., Inc.,* 148 F.3d 32, 35 (1st Cir. 1998)(quoting *Viquiera v. First Bank,* 140 F.3d 12, 18 (1st Cir. 1998)).

The First Circuit has established two ways to challenge subject matter jurisdiction under Rule 12(b)(1). The first, known as a "sufficiency challenge" or a facial attack, accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001). In this type of challenge, review is similar to that accorded a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing the motion, this Court credits all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the Hollingsworths' favor. *Id.*; *Murphy,* 45 F.3d at 522; *Carroll v. Xerox Corp.,* 294 F.3d 231, 241 (1st Cir. 2002).

To complicate matters, however, there is a second way of raising a Rule 12(b)(1) challenge, known as a factual or "accuracy challenge". A defendant mounting this type of challenge controverts "the accuracy (rather than the sufficiency) of the jurisdictional

---

[4] As sovereign, the United States may not be sued without its consent. *Murphy,* 45 F.3d at 522 (citing *United States v. Dalm,* 494 U.S. 596, 608 (1990)). Consequently, jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued. *Id.* (citations omitted).

facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position." *Valentin,* 254 F.3d at 363. When an accuracy challenge is raised, the Court is not restricted to the face of the pleadings, but may consider affidavits or other materials to resolve factual disputes concerning the existence of jurisdiction. *See id.* ("in conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction")*; Land v. Dollar,* 330 U.S. 731, 735 & n.4 (1947), *overruled in part on other grounds by Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949). A court's consideration of such material outside the complaint does not convert the motion into a motion for summary judgment, at least so long as resolution of the jurisdictional question is not intertwined with the merits of the case. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *Gonzalez v. United States*, 284 F.3d 281, 287 (1st Cir. 2002); *McLellan Highway Corp. v. United States*, 95 F. Supp. 2d 1, 5-6 (D. Mass. 2000).

### III.   Discussion

#### A.   Sufficiency Challenge

The first step is to analyze the sufficiency of the allegations in the Complaint.[5] The Complaint alleges subject matter jurisdiction pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1). *Compl.* at ¶ 4. In 28 U.S.C. § 1346(a)(1), Congress provided for a waiver

---

[5] It is not entirely clear whether the Government is mounting a facial challenge, a factual challenge, or both. In fact, it remains unclear what its precise quarrel is with the Complaint. For example, it notes that "under Rule 12(b)(1) the Court is not restricted to the face of the pleadings but may consider materials outside of the pleadings to resolve factual disputes concerning the existence of jurisdiction", and attaches a number of exhibits in support of its motion. *United States' Mot. to Dismiss* at 6. Plaintiffs eagerly agree that under Rule 12(b)(1) the Court may consider extraneous materials to resolve factual disputes, and they tailor their response as to a factual challenge. *See Pls.' Resp. to United States' Mot. to Dismiss* at 1. Nevertheless, the tenor of the Government's motion appears to be a facial or sufficiency challenge. "The United States simply argued in the motion to dismiss that the Plaintiffs failed to allege sufficient facts to establish jurisdiction". *United States' Reply to Pls.' Resp. to United States' Mot. to Dismiss* at 3. Furthermore, addressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their underlying accuracy.

of sovereign immunity by the United States in certain tax cases. In relevant part, the statute provides:

> (a) The district courts shall have original jurisdiction…of:
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws…

*Id.* The Supreme Court has stated that "despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit with certain conditions". *Dalm,* 494 U.S. at 601. Also relevant, then, is 26 U.S.C. § 7422, which states in part:

> (a) No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

*Id.* Finally, 26 U.S.C. § 6402 authorizes credits or refunds as follows:

> (a) In the case of any overpayment, the Secretary… may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax <u>on the part of the person who made the overpayment</u> and shall… refund any balance <u>to such person</u>.

*Id.* (emphasis supplied).

The First Circuit has ruled that lawsuits under statutes authorizing taxpayers to sue for a refund are subject to two important limitations: (1) they must be preceded by an administrative claim for a refund; and, (2) the taxpayer may not go to court until he has actually paid the assessment. *McMillen v. United States Dep't of Treasury,* 960 F.2d 187, 188-89 (1st Cir. 1991). In their complaint, Plaintiffs set forth sufficient facts to meet the

first prong; namely that they filed an amended 1993 tax return and their claim for abatement and/or refund was denied. *Compl.* at ¶¶ 10, 12. It is the sufficiency of allegations concerning the second prong, however, with which the Government is concerned.

The Government cites case law to support the proposition that a refund can be remitted only to the person who made the overpayment. *See Scanlon v. United States,* 330 F. Supp. 269 (E.D. Mich. 1971)(holding that a consultant has no basis to seek a refund when taxes were assessed against him but paid by grocery wholesaler who had assigned the consultant to oversee the operation of a store operated by third-party defendants); *Bruce v. United States,* 759 F.2d 755, 757-59 (9th Cir. 1985)(district court did not err in concluding that client has no standing when attorney paid tax liability on his behalf and there was no credible evidence that it was a loan); *Estate of Fink v. United States,* 653 F. Supp. 368, 374 (E.D. Mich. 1986)(taxes paid by funds of business with which decedent had minimal association; estate of decedent not entitled to refund for overpayment).

Plaintiffs counter that this case law is inapplicable. Here, with the apparent approval of the Bankruptcy Court, the Trustee paid taxes allegedly owed for a tax year prior to the bankruptcy filing, out of funds in the debtor's bankruptcy estate. *Pls.' Resp. to United States' Mot. to Dismiss* at 2. They cite countervailing case law, and conclude that "the bankrupt estate is wholly derivative of the debtor's pre-position rights in property. Accordingly, any right Mr. Hollingsworth's bankruptcy estate had to monies from the sale of real estate alleged by the Trustee must have been alleged to be the property of Mr. Hollingsworth." *Id. See, e.g., In re Yonikus,* 996 F.2d 866, 869 (1st Cir. 1993)(property

of the estate includes every conceivable interest of the debtor)(citing 11 U.S.C. § 541); *In re Rare Coin Galleries of Am., Inc.,* 862 F.2d 896, 900-1 (1st Cir. 1988)("the trustee steps into the shoes of the debtor for the purpose of asserting or maintaining the debtor's causes of action, which become property of the estate").

To some extent, however, these arguments get ahead of the game. The issue is not yet whether the underlying facts would support the finding of federal jurisdiction, but simply whether the allegations in the Complaint are sufficient to trigger federal jurisdiction in the first place. It is true that the sparse allegations in the Complaint require this Court to read much into little to find jurisdiction. The Complaint consists of only thirteen paragraphs and there is no mention of payment by the Bankruptcy Trustee. Two summary allegations in the Complaint respond to the Government's concern as to whether the Hollingsworths have satisfied *McMillen*'s second prong. Paragraph 1 alleges:

> This is an action under the Internal Revenue Laws of the United States for recovery of income taxes erroneously and illegally assessed <u>and collected from the Plaintiffs</u>….

*Compl.* at ¶ 1 (emphasis supplied). The Complaint also alleges:

> The income tax assessed based on the alleged taxable income generated by the forgiveness of debt in 1993 <u>was paid</u> to the Internal Revenue Service in or about June 2000.

*Compl.* at ¶ 11 (emphasis supplied). The IRS argues the passive wording in Paragraph 11 does not constitute an allegation that the Plaintiffs paid the tax. *United States' Mot. to Dismiss* at 9. But, the general allegation in paragraph 1, in this Court's view, is sufficient

10

to avoid dismissal under a facial challenge.[6]  The Plaintiffs have expressly alleged that the IRS collected the tax from them and the passive voice in paragraph 11 must be read in a manner consistent with paragraph 1.

### B. Accuracy Challenge

If the United States has mounted an accuracy challenge, it fares no better.  At the outset, this Court notes that this jurisdictional question is intertwined with the merits of the action.  Subject matter jurisdiction depends on 28 U.S.C. § 1346(a)(1), which, as noted by the Supreme Court in *Dalm,* must be read in conformity with other statutory provisions that condition a taxpayer's right to bring a refund suit.  494 U.S. at 601.  One such statutory provision, on which Defendant principally relies, is 26 U.S.C. § 6402.  Essentially, Defendant argues that the United States has not waived jurisdiction when the debtor files for a refund, but "the person who made the overpayment" under § 6402 is the trustee of debtor's bankruptcy estate.  The Government asserts a sovereign immunity defense under these statutes and 26 U.S.C. § 7422 by questioning whether the debtor made the overpayment, and whether his assets were used to do so.  Section 6402's application to the facts in this case is thus central to the question of jurisdiction.  However, to resolve this issue the Court must look at the merits of this case, since if the debtor was not the entity making the overpayment or if the funds were not his, the Plaintiffs cannot collect any refund.  *See Gonzalez,* 284 F.3d at 287 ("a jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends

---

[6] The supplemental materials reveal that the IRS did not collect the taxes directly from the Plaintiffs and, therefore, this allegation would be inaccurate unless subsumed by the legal argument that the Bankruptcy Trustee was acting for the Plaintiffs.  Despite the admonition that the claim should be a "short and plain statement", Fed. R. Civ. P. 8(a)(1), this allegation should have been more precise.  To be clear, this Court has considered the Plaintiffs' allegation that the IRS collected the income taxes from them to include the unstated allegation that the IRS did so when it received the Trustee's payment on their behalf.  It is on this basis that the allegation survives the Rule 12(b)(1) facial challenge.

upon the statute that governs the substantive claims in the case")(citing *McLellan,* 95 F. Supp. 2d at 5-6).

As noted earlier, when jurisdictional issues go directly to the merits of a plaintiff's claim, examination of materials outside the complaint can convert the motion to dismiss into a motion for summary judgment. *See supra* sec. II. However, while such a conversion is required in other Circuits, *see e.g. Holt,* 46 F.3d at 1003; this Circuit provides more flexibility. *Gonzalez,* 284 F.3d at 287 ("a Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case")(emphasis supplied). Indeed, the First Circuit has noted that when "jurisdictional facts…are inextricably intertwined with the merits of the case…the court may defer resolution of the jurisdictional issue until the time of trial". *Valentin,* 254 F.3d at 363 n.3.

Permitted to do so by *Valentin*, this Court defers resolution of the jurisdictional issue. There is apparently no dispute that the Trustee for Mr. Hollingsworth's bankruptcy estate actually paid the taxes Plaintiffs now seek to recover. But, this Court is not prepared to rule as a matter of law that a Trustee's payment of personal income taxes in a personal bankruptcy from the bankruptcy estate's assets can never constitute a payment under § 6402(a) when the debtor applies for a refund. This is particularly true when the parties have made differing claims as to whether the asset from which the payments were made was in fact the debtor's. To find facts based on the existing filings would require the Court to make evidentiary assessments on a sterile and incomplete record. On the other hand, to proceed down the accuracy challenge path and allow the parties to engage in discovery, to present further extrinsic evidence, and even proceed with evidentiary

12

hearing solely on the question of jurisdiction could well amount to an expensive and time-consuming non-dispositive diversion.[7]

This Court concludes that the expenditure of time, energy, and resources would be better devoted to raising this and other potentially dispositive matters in a format better designed for a full airing of the issues, after the parties have an opportunity to narrow areas of factual dispute.

**IV.     Conclusion**

This Court DENIES Defendant's motion to dismiss (Docket # 6) without prejudice.

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2005

---

[7] Were the Court to convert Defendant's motion to dismiss into a motion for summary judgment, it would not, on the existing record, grant it.